reviews the authorities upon this subject, and declares the rule and the reason upon which it rests in the following language:

"The general principle has been long settled in England and here that a secret agreement, which induced a creditor to agree to a composition by the promise of a preference, or of some undue advantage, over the other creditors, is utterly repugnant to the composition agreement, and, from its fraudulent nature, is avoided by the law. The very essence of a composition agreement is that all creditors come in upon terms of equality; and that equality would be destroyed, if the secret agreement were given effect."

If the agreement for a preference is between the debtor and creditor, it is a fraud upon the other creditors of the debtor, and is void; and "this rule," says Spencer, J., in Glens Falls Nat. Bank v. Van Nostrand, 41 Misc. Rep. 526, 85 N. Y. Supp. 50, affirmed, 103 App. Div. 598, 92 N. Y. Supp. 1125, "has also been applied where the consideration for the preference has been furnished by third parties, either with or without the knowledge and concurrence of the debtor."

The respondents in the court below and upon this appeal urge that the present case does not fall within the condemnation of the rule enunciated by the cases cited above, because the plaintiffs merely forbore to insist upon their legal remedies against Velleman, and the learned trial court refused to dismiss the complaint because of this alleged distinction. We think that the supposed distinction is imaginary rather than real. In every case where a creditor enters into a composition agreement and stipulates to take less than the full amount of his claim, he forbears to press his legal remedies against his debtor. The rule condemning such preferences is firmly established, and, as Judge Andrews in Almon v. Hamilton, 100 N. Y. 527, 3 N. E. 580, has well said, "is based upon public policy, and the principles of commercial honor, and we should be very unwilling to weaken it by nice distinctions."

The judgment is reversed, and the complaint dismissed, with costs. All concur.

---

## LENDGREN v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. October 27, 1911.)

1. MASTER AND SERVANT (§ 137*)—INJURIES TO SERVANT—RAILROADS—OPERATION—NEGLIGENCE.

Plaintiff, a switchman, having signaled an engine to follow, started ahead to turn the switch, the light of which was set against the engine, and, as he did so, fell on the track, and, before he could make a signal or get free, was run over. He did not countermand his signal, and the engine, which was moving very slowly, did not approach the switch light nearer than 11 feet, and could have been stopped on the instant. *Held,* that there was no negligence in the operation of the engine.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 137.*]

2. MASTER AND SERVANT (§ 112*)—INJURIES TO SERVANT—RAILROADS—EMPLOYER'S LIABILITY ACT—DEFECTIVE WAY.

In an action for personal injuries by a switchman, who fell as he was going toward a switch in front of an engine which he had signaled to follow, and was run over before he could get out of the way or signal

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the engine to stop, evidence *held* insufficient to show a defective "way," for which the railroad company would be liable under the employer's liability act (Consol. Laws 1909, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 112.*]

Appeal from Trial Term, Kings County.

Action by Matthew Lendgren against the Erie Railroad Company. From a judgment dismissing the complaint at the close of plaintiff's case, and from an order denying plaintiff's motion for a new trial, he appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

John F. McIntyre (Joseph A. Shay and Edward Weiss, on the brief), for appellant.

F. B. Jennings (William C. Cannon, on the brief), for respondent.

WOODWARD, J. The plaintiff was nonsuited, and upon this appeal is entitled to have the evidence regarded in its best aspects. The plaintiff pleaded a cause of action under the employer's liability act of the state of New Jersey, which is substantially like our own, and the facts alleged, and which we will regard as having been proved for the purposes of this appeal, are substantially as follows:

The plaintiff was employed by the defendant on the 18th day of October, 1910, as a mechanic's helper and extra switchman, remaining in this employment up to the 19th day of November, at which time he received the injuries. He was assigned to duty in the yard at Jersey City, this yard being in process of readjustment in connection with the Bergen Cut, and his duties required him to report to the engine dispatcher at 6 o'clock in the evening, when he was assigned to his work during the night. On the evening of the 19th of November, the plaintiff reported for duty and was assigned to throw the switches for the incoming engines, which ran in upon a "lead track," and were then turned in upon switches for the purpose of having their ash pans cleaned and their coal replenished. The plaintiff had discharged this duty for some 15 or 20 engines on the night in question, and had discovered that some of the switches had been moved during the day, and that the ties between the rails were not filled in with earth, and that there were various irons, known as "fishplates," and other loose materials scattered around the premises, as would be the case where extensive changes were being made. Just before the accident he was summoned to throw the switches for an engine which was being made ready to go out. At the time of this summons he was at the shanty provided for him, near switch No. 1, as shown upon the diagram in evidence, and after throwing this switch he signaled the engineer to come on, and started down the track toward switch No. 2. He was in control of the engine—the engineer obeyed his signals— and to reach switch No. 2 it was necessary to pass over the "lead track," which the plaintiff attempted to do at a distance of about 11 feet to the east of the switch, and between the oncoming engine and the switch. The plaintiff testifies that as he stepped between the rails

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of this "lead track" his foot caught upon something which seemed to hold him, that he was thrown down, and that before he could make a signal or get free he felt the engine coming down upon him, and his leg was taken off.

[1] The evidence showed that the switch light was set against the oncoming engine, but the evidence is equally clear that the engine did not approach the switch light nearer than about 11 feet, and was moving very slowly, so that it could be stopped on the instant, and it is not claimed that the plaintiff had in any manner countermanded his signal to the engineer to come forward, so that it must be clear that no negligence can be predicated upon the theory that the engine was not properly operated. The only suggestion in the case of any negligence in this respect is raised by a ruling of the court upon an effort of the plaintiff to establish a so-called custom in reference to the point at which the engine should stop before reaching a switch with the light set against it; but the ruling was so obviously correct that we do not feel that it is necessary to discuss it. The only ground of defendant's negligence worthy of any serious consideration is based upon the plaintiff's claim, partly at common law and partly under the statute, that the defendant had failed to provide a reasonably safe place for him to work; that there was a defect of the ways, works, and machinery. The evidence, however, fails to tell us of any defect which was the producing cause of the accident. It is true that there was evidence that the yard had undergone some changes; but the plaintiff was regularly employed there, and not only knew that changes were being made, but he had, on the very evening of the accident, been at work upon this very territory, operating these same switches, and his testimony shows that he was thoroughly familiar with all of the conditions existing at the point of the accident, yet we are left without a particle of evidence as to what actually produced the accident. There is some testimony about "fishplates"; but he does not tell us that it was a fishplate which caught his toe, or, if it was, that it was not properly placed, or that there was anything unusual about it or inconsistent with the requirements of practical railroading.

[2] True, he testifies that the ties between the rails were bare; but there is no testimony that this was not a proper condition at a moving switch in a railroad yard, and the whole case is absolutely barren of any evidence from which the jury might properly find that there was any defect in the railroad at the point where the accident occurred, either as it related to a reasonably safe place in which to work, or in respect to the ways, works, and machinery of the defendant, assuming that the railroad yard could be held to be a "way," within the meaning of the employer's liability act. The mere fact that the switch had been changed in location, and that there were irons, etc., scattered about the premises, is of no possible importance, unless it is shown that there was a defect of some kind at the point of the accident, and all of the plaintiff's testimony in respect to this question is as consistent with perfect conditions of practical railroading as with the theory of a defect. There was no question of negligence to be submitted to the jury. The evidence failed to establish a cause of action,

and the learned court properly granted the defendant's motion to dismiss the complaint.

The judgment and order appealed from should be affirmed, with costs. All concur.